# UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY



MARTIN LUTHER KING JR. FEDERAL BLDG. & U.S. COURTHOUSE
50 WALNUT STREET, P.O. BOX 419
NEWARK, NJ 07101-0419
**(973) 645-6340**

**WILLIAM J. MARTINI**
     **JUDGE**

October 19, 2005

## LETTER OPINION

<u>**VIA REGULAR MAIL**</u>

R. Joseph Gribko
U.S. Attorney's Office
970 Broad Street
Newark, NJ 07102
(*Attorney for Plaintiff*)

Henry E. Klingeman
Klingeman Turano LLC
230 Main Street
2nd Floor
Madison, NJ 07940
(*Attorney for Defendant*)

      Re:    United States v. Kwadene Livingston
                  Crim. No. 05-098 (WJM)

Dear Counsel:

     This matter comes before the Court on Defendant Kwadene Livingston's ("Livingston") motion to suppress evidence seized pursuant to a search warrant. The issue was briefed by Livingston and Plaintiff United States of America (the "Government"). Oral argument was held on October 7, 2005, at which time the matter was taken under advisement. Now, for the reasons set forth below, Livingston's motion is **denied**.

## Background

     On November 15, 2005, investigators from the Essex County Prosecutor's Office (the "Officers") received information from a confidential informant ("CI") stating that a black male, identified as "Kwa Livingston," was distributing cocaine out of his apartment in Newark, New Jersey (the "Apartment"). The CI was the owner and landlord of Livingston's Apartment. In

addition, the CI had criminal charges pending against him in Morris County Superior Court and never previously acted as an informant.

The CI told the Officers that Livingston kept drugs and firearms in the Apartment. After receiving this information, the Officers conducted an inquiry on Livingston with the National Criminal Information Center ("NCIC"). They found that Livingston was previously arrested twelve times for narcotics violations and had twenty-seven felony convictions. The Officers also obtained a photograph from the New Jersey Department of Corrections, which the CI confirmed as Livingston. Additionally, the Officers contacted the Public Service Electric and Gas Company ("PSE&G") to obtain the billing information for the Apartment. PSE&G stated that the billing name for the Apartment was "Shakimah L. Blake." According to the CI, Livingston was married to a woman named "Regina Blake."

The Officers then undertook the first of their two "controlled buys." In the first controlled buy, the Officers met the CI at a prearranged location, searched him and his car to ensure that he had no drugs or money, and followed him as he drove to the Apartment. At the Apartment, the Officers watched the CI knock on the front door of the building in which the Apartment was located (the "Building"). The Officers then saw a black male, who appeared to be Livingston, appear at the front door. According to the Officers, Livingston opened the door and engaged in a brief conversation with the CI. The CI and Livingston then entered the Building and, a few moments later, the Officers noticed a light turn on in the first floor left side of the Building where the CI described the Apartment was located. Later, the Officers witnessed the two men leaving the building together. The CI then entered his car and the Officers followed him to a prearranged meeting location where he gave the Officers two glass vials containing cocaine.

In the second controlled buy, the Officers again met the CI at a prearranged location and searched him for drugs and money. This time, however, the Officers gave the CI $20.00 in prerecorded U.S. currency to consummate the transaction.[1] The Officers then drove the CI to the Building and watched him enter the front door. Shortly thereafter, the Officers observed the CI exit the building and walk to a prearranged meeting location. When the Officers reconvened with the CI, he handed them two vials of cocaine.

Based on these events, the Officers sought a search warrant for Livingston's Apartment. Investigator Dante Pasquale ("Officer Pasquale") submitted a sworn affidavit (the "Affidavit") in support of the warrant. The Essex County Superior Court issued a warrant on November 23, 2004, and the Officers executed the search later that day. When the Officers entered the Apartment, they seized the following items: a sawed-off 12-gauge shotgun; two boxes of 12-gauge shotgun shells; a brown paper bag containing additional 12-gauge shotgun shells; a .380 caliber handgun loaded with eight bullets; one box of .380 caliber ammunition; eighteen hollow-

---

[1] Apparently, the cocaine provided to the CI in the first controlled buy was a "free sample." In the second controlled buy, the CI supposedly exchanged money for cocaine.

point .45 caliber rounds and six additional .45 caliber rounds; fifty-nine clear vials each containing 5.9 grams of cocaine; a plate with a razor and approximately six grams of cocaine; two scales; and $180 in United States currency.

Livingston now moves to suppress this evidence. In particular, Livingston argues that the Affidavit lacked probable cause because it omitted the following information: (1) the CI's status as a first-time informant; (2) the CI's criminal history; (3) the CI's pending drug distribution case in Morris County Superior Court; (4) the CI's status as the owner and landlord of the Building; and (5) that the Officers never actually witnessed or recorded Livingston's participation in the controlled-buys, but instead relied upon the CI's word after he emerged from the Building.

## Discussion

Livingston challenges the validity of the search based on *Franks v. Delaware*, 438 U.S. 154 (1978). Under *Franks,* a defendant is entitled to a hearing if he or she makes a substantial preliminary showing that: (1) the affiant knowingly and deliberately, or with reckless disregard for the truth, made false statements or omissions creating a falsehood in applying for the warrant; and (2) such statements or omissions are material or necessary to a finding of probable cause. *Franks*, 438 U.S. at 155-56. If the accused makes this substantial showing, "and then, at the hearing, shows by a preponderance of the evidence that material statements in the affidavit are either recklessly or intentionally untruthful, the fruits of the search must be excluded unless the remaining content of the warrant is sufficient to establish probable cause." *United States v. Brown*, 3 F.3d 673, 676 (3d Cir. 1993). The *Franks* test applies to both misstatements and omissions of fact in affidavits. *See United States v. Frost*, 999 F.2d 737, 743 n.2 (3d Cir. 1993).

Regarding the first prong of *Franks*, the Third Circuit has held that "omissions are made with reckless disregard for the truth when an officer recklessly omits facts that any reasonable person would know that a judge would want to know." *Wilson v. Russo*, 212 F.3d 781, 783 (3d Cir. 2000). Under the second prong of *Franks*, the Court must assess whether the omissions "were 'material or necessary to a finding of probable cause." *Id.* at 789 (quoting *Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir. 1997)). "The test for materiality is to insert the facts recklessly omitted and determine whether the 'corrected' warrant establishes probable cause." *Cummings v. City of Philadelphia*, 137 Fed. Appx. 504, 506 (3d Cir. 2005) (citing *Wilson*, 212 F.3d at 789); *Sherwood*, 113 F.3d at 400.

A determination of probable cause is derived from the "totality of the circumstances." *Illinois v. Gates*, 426 U.S. 213, 238-39 (1983). Probable cause "exists where the facts and circumstances within the affiant's knowledge, and of which he has reasonable trustworthy information, are sufficient unto themselves to warrant a man of reasonable caution to believe that an offense or crime has been or is being committed." *Berger v. New York*, 388 U.S. 41, 55 (1967). In *Gates*, the Supreme Court stated that when information is obtained from an informant, his "veracity" and "reliability" are "highly relevant" in determining the existence of probable cause. *Gates*, 462 U.S. at 230. However, the Supreme Court cautioned that they are not

"separate and independent requirements," but "may usefully illuminate the common-sense, practical question" of probable cause. *Id.*

### A.     Omission of CI's Status as a First-Time Informant.

The first omission that Livingston attacks is the lack of any statement in the Affidavit concerning the CI's status as a first-time informant. The Affidavit clearly omits this information. Regardless of whether this omission was intentional or reckless, it was not material or necessary to a finding of probable cause.

The Third Circuit has stated that "reliable tips in other matters should not be understood to be the only way the reliability of an anonymous source can be established." *United States v. Williams*, 3 F.3d 69, 73 (3d Cir. 1993); *see also Skunda v. Pa. State Police*, 47 Fed. Appx. 69, 73 (3d Cir. 2002) ("Under *Gates*, reliability is not a separate factor in a probable cause analysis and it is not a sine qua non for probable cause."). In fact, "*Gates* requires merely enough corroboration of an informant's testimony through other sources in order to demonstrate some basis for the informant's reliability." *United States v. Vastola*, 670 F.Supp. 1244, 1277 (D.N.J. 1987). Thus, in *United States v. Clark*, 110 Fed. Appx. 245, 249 (3d Cir. 2004), the Third Circuit found that probable cause existed to issue a search warrant where the police sought to corroborate the information, even though the affidavit was based on information from a first-time confidential informant.

Here, the Officers corroborated the CI's reliability, even though the CI was a first-time informant. First, the Officers ran an inquiry with the NCIS and established Livingston's long history of arrests for drug-related offenses. Second, the officers obtained a picture from the NJDC, which the CI confirmed as Livingston. Third, the Officers established that the utilities to the Apartment were under the name of "Shakimah Blake," which was similar to the name provided by the CI as Livingston's wife. Fourth, and most importantly, the Officers conducted the First Buy where they: (i) witnessed the CI approach the front door of the Building; (ii) saw a man appearing to be Livingston, as based on the photograph, appear at the front door; (iii) watched the CI and Livingston enter the Building; (iv) observed a light go on in an apartment described by the CI as belonging to Livingston and where the CI claimed Livingston's alleged drug activities occurred; (v) witnessed the CI and Livingston exit the building together; and (vi) confirmed that Livingston, upon exiting the Building, was in possession of cocaine.

The "totality of the circumstances" present here created enough probable cause for the warrant to issue. *See Williams*, 3 F.3d at 72 (noting that even though affidavit did not contain "a statement that the informant had given reliable information on earlier occasions," the magistrate "was entitled to rely on the fact that the [informant's] report of drug activity was corroborated to some degree by the independent investigation of the police which uncovered [the party's] drug record."). Accordingly, even if this information were inserted into the Affidavit, there would still be a finding of probable cause.

### B.     Omission of CI's Criminal History and Pending Criminal Charges.

Livingston next argues that the Affidavit was defective because it did not mention the CI's prior criminal history and his pending criminal case in Morris County Superior Court. This information was clearly omitted from the Affidavit. Regardless, it was again not material to a showing of probable cause.

As described earlier, the Officers corroborated the CI's information by performing a criminal background check on Livingston, showing the CI a picture which he confirmed as Livingston, investigating the utility bill of the Apartment, and conducting the two controlled buys where the Officers viewed Livingston and saw Livingston enter without cocaine and leave with cocaine. This sufficiently corroborated the CI's reliability, even thought the Affidavit omitted the CI's criminal history and the pending criminal charges. *See, e.g., Skunda*, 47 Fed. Appx. at 72 (holding that an affidavit omitting that the informant was a first time untested confidential informant against whom there was pending criminal charges nevertheless established probable cause because there was other supporting information in the affidavit showing reliability). Even though this information may have proved useful in establishing reasonable doubt at trial, it was not a material omission. As the Third Circuit noted, "[n]othing in our jurisprudence requires a police officer to present every scintilla of information acquired during an investigation to satisfy the standard of probable cause, as long as his submission was made in good faith." *Steele v. City of Erie*, 113 Fed. Appx. 456, 459 (3d Cir. 2004). Accordingly, even if such material were inserted into the Affidavit, it would not affect the finding of probable cause.

### C.     Omission of CI's Status as Owner and Landlord of Building.

Livingston next argues that omission of the CI's status as owner and landlord of the Building was reckless and that such information was material to a finding of probable cause. I disagree. It is unclear how omission of this information was reckless and how its inclusion would detract from a showing of probable cause. In fact, it seems that inclusion of such information would actually heighten such as showing. For instance, the CI's status as owner and landlord of the Building may have provided him with unique knowledge of the happenings inside the Building and, in particular, of Livingston's conduct in the Apartment. Furthermore, it may have provided the Officers with an accurate depiction of the premises to be searched, thereby allowing the Officers to focus their activities directly on the premises in question (i.e., the Apartment). Accordingly, this information was not necessary to a finding of probable cause.

### D.     Omission of Fact that Investigators Relied on CI's Description of Events Inside Apartment.

Finally, Livingston argues that the Affidavit omitted the fact that the Officers did not actually witness the drug transactions between Livingston and the CI, but instead observed them from a distance and relied on the CI's description of the events in the Apartment. Livingston contends that this omission helps defeat any probable cause created by the two controlled buys.

5

This argument in unavailing. The Affidavit clearly contained this information. The Affidavit states that the officers "followed" the CI to Livingston's Building and observed him "knocking on the front door" of the location. Furthermore, the Affidavit states that the CI and Livingston were "then observed entering" the Building. The Officers then witnessed a light turn on in an apartment located on the first floor left side of the Building – the same apartment that the CI described as belonging to Livingston. The Affidavit then states that "[m]oments later, [Livingston] and the CI were observed exiting the residence." The clear import of this text is that the Officers were witnessing the CI make the purchase from a distance. The Third Circuit has repeatedly noted that "[s]earch warrants are 'normally drafted by non-lawyers in the midst and haste of criminal investigation.'" *Doe v. Goody*, 361 F.3d 232, 245 (3d Cir. 2004) (quoting *United States v. Ventresca*, 380 U.S. 102, 108 (1965)). As a result, "they are to be read 'in a commonsense and realistic fashion.'" *Id.* (quoting same). Livingston wishes this court to now undertake a hyper-technical review of the affidavit, which is inappropriate in hindsight. Therefore, the Officers did not recklessly omit such information.

In *Sherwood v. Mulvihill*, 113 F.3d at 401, a case similar to this one, the Third Circuit held that a search warrant based on an affidavit where officers in a vehicle observed a controlled buy from a distance sufficiently established probable cause. This result has been upheld by other circuits, too. *See, e.g., United States v. Smith*, 9 F.3d 1007, 1012 (2d Cir. 1993) ("It is certainly not fatal that [the officer] did not personally witness the cocaine purchases underlying the warrant, but instead relied on what the CI told him about the purchases."); *United States v. Smith*, 914 F.2d 565, 568 (4th 1990) (upholding a finding of probable cause when police official stated in an affidavit that the informant entered a motel room with no cocaine in his possession and exited the room possessing cocaine). Likewise, that the Officers witnessed the controlled buys from a vehicle outside the Building, where the buys occurred, does not defeat a showing of probable cause.

## **CONCLUSION**

For the foregoing reasons, Livingston's motion to suppress is **DENIED.** An appropriate Order accompanies this Opinion.

s/ William J. Martini
**William J. Martini, U.S.D.J.**
